### LANIER v. BRUNSON.

1. A trustee who was appointed under the authority of a marriage settlement for the purpose, in part, of prosecuting certain claims held under the settlement, upon which claims judgments were afterwards obtained, is entitled to commissions on the amount received in compromise of such judgments, directly by the *cestui que trust*, but in the presence of the trustee and on their joint receipt.

2. Where a marriage settlement vested in a trustee the legal title of choses in action, the statute of uses does not apply, and the trust continues until the trustee divests himself of the legal title; and in whatever form he turns over the assets to his *cestui que trust*, he is entitled to his commissions.

3. Where, in action by trustee and *cestui que trust* against others, judgment is rendered, in form, in favor of the latter, it is, in effect, in favor of both plaintiffs, and upon the money realized under such judgment the trustee is entitled to commissions.

4. In this action against the defendant individually, she asserted as a counter-claim a note due to her as executrix. *Held*, that a demurrer to this counter-claim was properly sustained, there being no sufficient allegation of her qualification as executrix, and the claim and counter-claim being in different rights.

5. There being no proof that the defendant was the appointed or qualified executrix, the counter-claim could not be sustained.

Before KERSHAW, J., Edgefield, October, 1882.

The opinion states the case. The Circuit decree was as follows:

This case was heard upon exceptions taken to the report of the master by both plaintiff and defendant. Several questions were made, which shall be considered in their order.

1. Was the plaintiff entitled to commissions on money invested by him in the purchase of land, with the approval of the *cestui que trust*, and in accordance with the powers conferred upon him by the deed? A trustee is allowed commissions on all money received and paid out by him in due course of administration of the trust. If, therefore, the money expended in the purchase of the land in question was rightfully invested, of which there is no question, the trustee is entitled to his commissions upon the amount so paid. It would be a strange anomaly, if a *cestui que trust* could direct an investment of trust funds in the purchase of land, and by such investment defeat the just claim of the trustee to compensation for his services and responsibilities as trustee, and there is no propriety or equity in such a proceeding which will entitle the *cestui que trust* to claim the protection of this court against such a demand on the part of the trustee.

2. Money was loaned to one Cheatham, with the approval of the *cestui que trust*, upon a note and mortgage, which were turned over to defendant as part of the trust property. It turned out that the note was not wholly collected. Defendant excepts to the allowance of commissions on the whole amount of the note and mortgage. This question will be disposed of by overruling the exception upon the authority of the cases of *Ball* v. *Brown, Bail. Eq.*, 374, and the decisions there referred to, of which *Deas* v. *Spann, Harp. Eq.*, 176, may be considered the leading case. Where the trust estate consists of bonds, notes, or other choses in action, which the trustee turns over to the *cestui que trust*, and they are received as money, commissions are due upon such a transaction, as if the trustee had collected the securities and paid over the money.

3. The trustee recovered a judgment, which was agreed by the *cestui que trust* to be assigned to one Hollingsworth upon his paying her $5,000, and satisfying the costs and fees of the lawyers of the trustee who obtained the judgment—the whole amount to be paid by Hollingsworth not to exceed $7,061. This was regarded as a compromise arrangement, and was assented to by the trustee, who executed the assignment. The money was paid by Hollingsworth, according to the agreement, $5,000 to the defendant, and the balance, $1,861, to the costs and fees of the lawyers.

The master has allowed commissions on the amount paid to defendant only. Defendant excepts to the allowance of any commissions on this trust action, while plaintiff excepts, because commissions were not allowed upon the whole amount which Hollingsworth agreed upon as the utmost extent of his liability.

Both exceptions are overruled. The defendant's, on the authority of the cases cited above, and the plaintiff's, because this was a compromise made by the defendant, to which he assented, and which is the same, in effect, as if he had assigned the judgment to Hollingsworth upon the payment of $5,000, with an indemnity against the claims of his attorneys for their costs and fees. If the attorneys had been content to receive nothing from Hollingsworth and released him, as they might have done, would it be pretended that the plaintiff could have charged commissions on the sum they might have claimed for their services, but which they saw fit to remit? In no sense can the money paid by Hollingsworth to the lawyers under this arrangement be deemed equivalent to the receipt and disbursement of money by the trustee, and therefore the foundation for the claim of commissions does not exist.

4. The eighth exception of the defendant objects to any commissions being allowed the trustee, because she was entitled, after the death of her husband, to have the whole trust estate turned over to her. I am unable to find any question to discuss in this exception. If defendant was entitled to the estate after the death of her husband, and that estate consisted of choses in action, and other securities for money payable to the trustee, how could she receive the same, unless the trustee either collected the securities and paid over the money, or assigned them to her? In either case, as I have shown, he would be entitled to commissions.

5. The plaintiff excepts also to any finding of fact by the master, but I cannot conceive how he could have obeyed the order of the court, which required him to take the testimony and state the accounts between the plaintiff and the defendant, without a finding of facts, and this exception is also overruled.

6. The defendant's sixth and seventh exceptions are well taken. The plaintiff is estopped and cannot claim that the money received by him from the sheriff, and paid over to the defendant, was not

a part of the trust estate; at least, under the circumstances, the defendant cannot here be made liable to refund the amount should the contingency hereafter happen which the master has sought to provide for. We can only, in this action, deal with existing facts properly in evidence. These exceptions are sustained.

7. The last exceptions to be noticed are those of the plaintiff (the first and fourth) which complain that the master allowed the counter-claim set up by the answer. This claim consists of a note which, it was said, was held by defendant's deceased husband, payable to him, and made by the plaintiff, which came to defendant's hands as executrix of her husband. The plaintiff demurred to this counter-claim, and objected to any evidence being received in regard to it. The plaintiff also excepts to a finding of the master, as matter of fact, that the deceased husband, Robert D. Brunson, left a will, or that defendant was executrix, because there was no proof of these facts. He also excepts to the allowance of the counter-claim, because the note, if the facts are conceded, could not be set up as a counter-claim.

These exceptions must be allowed. The answer does not contain a sufficient allegation to support the counter-claim, nor was the title of the defendant, as executrix, sufficiently proven. Nor can the note in question be the proper subject of a counter-claim in this action, not being due to defendant in the same right in which she is sued. The note is claimed to be due to her as executrix, while she is sued in her individual and personal character. She could not maintain an action on it in her own right, and consequently cannot set it up as a counter-claim in an action brought against her personally. *Pom. Rem.*, § 751. It is not impossible that she might have made it the subject of an application to the court in proper form, in behalf of the estate which she claims to represent, so that whatever the plaintiff might recover in this action should be subjected to the payment of the debt, and it may be that after the recovery of judgment herein, some such relief may be had, especially if plaintiff is in insolvent circumstances; but as a counter-claim herein, it cannot be sustained for the reasons given.

It is therefore ordered and adjudged, That the report, as modified by this decree, be confirmed and made the judgment of this

court, and that the defendant pay the plaintiff the sum of two hundred and forty-six 37-100 dollars, and also the costs of this action, to be adjudged by the clerk and by him inserted in the judgment, and that plaintiff have execution therefor.

*Mr. W. H. Folk,* for appellant.

Under our statutes, a trustee is entitled to commissions only on moneys, &c., *received* and *paid away. Bail. Eq.,* 374. Lanier never received nor paid away this money, and he had no right to receive it, for the judgments were in favor of Mrs. Brunson and in her name. 11 *S. C.,* 566. Besides, the husband being dead, there was no longer any trust. *Speer Eq.,* 587. The cases cited by the Circuit judge—*Bail. Eq.,* 374; *Harp. Eq.,* 176— do not apply; for here the judgments were recovered by Mrs. Brunson. See 2 *McCord Ch.,* 473. Lanier's consent was purely formal, and amounted to nothing. Under the circumstances of this case, the counter-claim was proper. *Water. Set-Off,* §§ 10–17; 12 *Am. Dec.,* 155; 10 *Paige,* 369; *Bail. Eq.,* 156; 2 *Mc-Cord,* 185.

*Messrs. Glover & Abney,* contra.

As trustee acting, and for services rendered, Lanier was entitled to the commissions claimed. Statute of uses has no application to personal property. *Speer Eq.,* 579, 593; 6 *Rich.,* 315; 3 *S. C.,* 78; 5 *Id.,* 446. The trust was not executed at Brunson's death, the judgment was never assigned to Mrs. B., and the trustee's control continued. There must be delivery of possession to divest a trustee of the legal title to personalty. *Hill Trust.,* 236, 248, and cases *supra.* Where otherwise executed, the beneficiary was in possession. At any rate, he is entitled to commissions. *Pars. Cont.,* 793–99; *Herm. Est.,* §§ 322, 417. But he constructively received the money. *Bail. Eq.,* 374. And the trust deed expressly provides for compensation. 13 *Rich. Eq.,* 195. The counter-claim was properly excluded. *Code,* §§ 170, 171; *Pom. Rem.,* §§ 749, 750. And for want of proof.

March 26, 1884. The opinion of the court was delivered by

Mr. Justice McIver. The facts out of which the questions made by this appeal arise are, substantially, as follows: The plaintiff having become trustee of the defendant under a marriage settlement executed by her in contemplation of marriage with her late husband, R. D. Brunson, commenced an action against James B. Griffin, the guardian of the defendant, and his sureties, to recover the amount due by such guardian, which resulted in judgments against the guardian and one of his sureties, as well as against the heirs at law, legatees, and devisees of another surety to whom lands had descended. This was done in accordance with one of the provisions of the marriage settlement, by which the trustee "is required, and shall have power, to make settlements with James B. Griffin, guardian, or with any person for said James B. Griffin, in whose hands the property, estate, and funds of said Margaret C. Hollingsworth (now Brunson) may be. * * * And the said trustee * * * is further empowered to bring suits, and take such steps for the collection and preservation of the property, money, and estate of said Margaret C. Hollingsworth, as he may deem proper and fit, and proceed against any person or persons who may be liable or bound to said Margaret C. Hollingsworth for any property, money, or estate appertaining or belonging to her, and as a compensation for such labor and trouble, the trustee shall be entitled to retain a reasonable sum from the trust funds to pay expenses and charges."

It seems, therefore, that one of the objects contemplated by the parties in executing the marriage settlement was to provide for the collection of the money due to the defendant by suit if necessary. Accordingly, as we have said, suit was brought by Lanier, in which he joined with him as plaintiffs the defendant and her husband. The latter, however, died October 1st, 1870, after the suit was commenced; but it does not appear that any notice was taken of that fact in the future progress of the case. Some time subsequently to the recovery of the judgments above mentioned a compromise was effected with John H. Hollingsworth, one of the parties against whom judgment was recovered, whereby he was to be discharged upon the payment to the defendant of five thousand dollars and her counsel fees and costs,

estimated at the amount of two thousand and sixty-one dollars, and accordingly a paper was drawn up, of which the following is a copy:

"STATE OF SOUTH CAROLINA, ⎱ *In Common Pleas.*
     County of Edgefield. ⎰

"JAMES A. LANIER *et al.*, plaintiffs, against JAMES B. GRIFFIN *et al.*, defendants.—Bill for account, &c.

"A decree having been made by the Supreme Court in this case, and judgment having been entered thereon, and a compromise having been made in the case between John H. Hollingsworth and M. Cornelia Brunson for the sum of seven thousand dollars ($7,000), the said Cornelia Brunson hereby remits to the said John H. Hollingsworth, who is a legatee and takes under the will of D. M. Hollingsworth, all the rights which the law gives to a surety who pays a debt, and further assigns, transfers, and sets over to John H. Hollingsworth all her right, interest, and title in and to said case, and in the judgments in said case, and her right against all the parties thereto against whom she may have claims, but all without recourse in any form against her, and without recourse upon her for costs and fees. The balance of attorney costs, $61, to be paid to General Gary by John H. Hollingsworth.

                                    "M. C. BRUNSON.
                                    10th January, 1881.
                                    "J. A. LANIER,
                                    "*Trustee for M. C. Brunson.*
"Witness: THOMAS THOMSON.
"Witness: W. H. FOLK."

In pursuance of this compromise, John H. Hollingsworth paid over to the defendant the said sum of five thousand dollars in the presence of the plaintiff, who then claimed his commissions, but was induced to refrain from pressing his claim at that time, for fear of breaking up the compromise, being told that he could afterwards assert his claim. The testimony of Hollingsworth was that he refused to pay over the money unless Lanier signed the assignment of which the above is a copy. This action was

then brought by the plaintiff to recover commissions on the said sum of seven thousand dollars, and the defendant, amongst other defences, set up a counter-claim as follows: "That the said James A. Lanier is indebted to her as executor of Robert D. Brunson, deceased, by his note dated May 26, 1869, due at one day, in the sum of five hundred dollars, less a credit of $25, August 30, 1870, for cash loaned to him." To this counter-claim the plaintiff filed a demurrer upon the ground that it did not state facts sufficient to constitute a counter-claim; and that it is not a counter-claim to this action, the defendant having no right of action on the same in her individual capacity.

The case came before the Circuit judge upon the master's report and exceptions thereto, who held, so far as the questions involved in this appeal are concerned, that the plaintiff was entitled to commissions on the sum of five thousand dollars paid to the defendant, but not on the additional sum of two thousand and sixty-one dollars to be paid to her attorneys for fees and costs, and that the demurrer to the counter-claim should be sustained, upon two grounds: First, that the answer does not contain a sufficient allegation to support the counter-claim; second, that the note was not a proper subject of counter-claim in this action, not being due to the defendant in the same right in which she is sued; and rendered judgment accordingly.

From this judgment defendant appeals upon two grounds, the third being of too general a nature to require any notice from us, as has been frequently held: "1. Because of error in holding 'that the plaintiff was entitled to commissions as trustee on the five thousand dollars paid to defendant by John H. Hollingsworth,' the said plaintiff never having received nor paid out the same. 2. Because of error in holding 'that the note set up in discount by the defendant against plaintiff's claim for commissions was not a good and valid counter-claim or set-off against any and all demands of the said plaintiff.'"

The reasons given by the Circuit judge and the authorities which he has cited in support of his conclusions are so entirely satisfactory that we scarcely deem it necessary to add anything to what he has said. It is very manifest that one of the objects in having the plaintiff appointed trustee was to have the claim of

the defendant against the guardian properly prosecuted, as the marriage settlement not only authorized but required this to be done by the trustee. Now, when this duty was performed, and nothing remained to be done but receive the money which was the fruit of the litigation commenced and prosecuted by the trustee, it would seem strange indeed if the mere fact that the money was paid into the hands of the *cestui que trust* instead of the trustee, who was present and ready to receive it, should deprive the latter of his claim to the usual compensation. The testimony shows that Hollingsworth refused to pay the money unless the trustee executed the assignment, which he accordingly did, and the case is, therefore, very much like the case suggested in the argument of respondent's counsel, of money being deposited in bank to the credit of a trustee, which, of course, could only be drawn out upon his check. Certainly, in such a case, if the trustee, accompanied by his *cestui que trust* or her agent, went to the bank, signed the check, and allowed the money to be paid directly into her hands, instead of his own, this would not deprive him of his right to commissions.

It is argued, however, that upon the death of Robert D. Brunson the trust terminated, and the plaintiff was no longer trustee, and the defendant had a right to receive directly her own money. Even if this were so, it would seem a little strange that no such suggestion appears to have been made until the trustee comes to claim compensation for the performance of the very duty for which he was appointed. But is it so? The marriage settlement contains no such provision; on the contrary, that instrument vested the legal title of the estate of the defendant, consisting solely of choses in action, personal property, in the trustee for the very purpose of enabling him to convert such choses in action into money; and even if there had been nothing further for the trustee to do, the property being personalty, the statute of uses would not apply, and until he had delivered possession, or in some other way divested himself of the legal title, the trust would continue. *Harllee* v. *Platts*, 6 *Rich.*, 315, and other cases cited by the respondent. When he did turn over the assets to his *cestui que trust*, whether in the form of money or in the form

of bonds or judgments, he would be entitled to commissions, under the authorities cited by the Circuit judge.

Again, it is argued that when Judge Carpenter rendered judgment in the original case of *Lanier and others* v. *Griffin and others*, he rendered judgment in favor of M. C. Brunson by name and not in favor of the plaintiffs in that action, and, therefore, she alone, and not the trustee, had the right to enforce such judgment and receive the money. While it is true that the judgment is, in form, in favor of Mrs. Brunson, who was the real party in interest, yet it must be manifest that this was not done under the view that the trust had terminated, or with the purpose of excluding any of the rights of the trustee. Nothing of the kind appears in the decree. Indeed, it does not even appear in that decree, as reported in 11 *S. C.*, 567, when it was filed, or when Robert D. Brunson died, and it is quite clear that nothing whatever was intended to be adjudged as between the plaintiff, Lanier, and his co-plaintiff in that suit, Mrs. Brunson. The decree in that case was, in effect, though not in form, a decree in favor of the plaintiffs in that case, as it should have been. We do not think, therefore, that appellant's position derives any strength from the fact that the judgment in that case was nominally in favor of M. C. Brunson.

The second ground of appeal cannot be sustained. There was no sufficient allegation that the defendant was the duly qualified executor of Robert D. Brunson, deceased, and therefore the counter-claim was open to the demurrer interposed. But in addition to this, it would seem from the authority cited (*Pom. Rem.*, § 751) that the note set up as a counter-claim, not being due to defendant in her own right, could not be pleaded as a counterclaim. Mrs. Brunson individually and Mrs. Brunson as executrix of the will of her husband are in law two distinct and different persons. Besides, even if the demurrer should have been overruled, the Circuit judge states that there was no evidence that the defendant had ever been appointed or qualified as executrix of her husband's will, and this statement is fully sustained by an examination of the testimony set out in the "Case"; and in the absence of such evidence, it is quite clear that the counterclaim could not be sustained.

Whether the defendant could not, by proper allegations and proofs, have obtained the benefit of the note set up as a counter-claim, or whether she may not still subject the amount recovered in this action to the payment of that debt, as intimated by the Circuit judge, are questions which are not now before us, and cannot, therefore, be considered or adjudged.

The judgment of this court is that the judgment of the Circuit Court be affirmed.